UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| BOLIVAR JOHAN PAULINO MARRERO, <br><br> Petitioner, <br><br> v. <br><br> RAUL MALDONADO, *et al.*, <br><br> Respondents. | **MEMORANDUM DECISION AND ORDER** <br><br> 26-cv-2532 (BMC) |

**COGAN**, District Judge.

Petitioner Bolivar Johan Paulino Marrero, a native and citizen of the Dominican

Republic, seeks a writ of habeas corpus under 22 U.S.C. § 2241 ordering his immediate release

from U.S. Immigration and Customs Enforcement detention, or in the alternative, a bond hearing

pursuant to 8 U.S.C. § 1226(a).  For the reasons below, the petition is denied.

### BACKGROUND

Petitioner is a lawful permanent resident of the United States.  In 2021, he was convicted

of theft in Pennsylvania court and ordered to pay a fine.  In 2024, he pled guilty to another

instance of the same offense and received the same fine.  According to petitioner,[1] the second

conviction was vacated because he was not advised of the immigration-related consequences of

his guilty plea.  See Padilla v. Kentucky, 559 U.S. 356 (2010).

---

[1]  Petitioner has not provided, and the Court has not identified, any court order reflecting the vacatur.  Petitioner's counsel attached as an exhibit to its papers in this case a brief in support of vacatur in Commonwealth v. Paulino-Marrero, No. CP-40-SA-258-2025 (Luzerne Cnty. Ct. May 12, 2025), but a review of that case's docket reflects charges of  "Disorderly Conduct Hazardous" arising under 18 Pa. Cons. Stat. § 5503(a)(4), not retail theft.  In any event, as discussed below, the vacatur is relevant only to the validity of his removal order, a matter which this Court has no jurisdiction to hear.  See 8 U.S.C. § 1252(b)(9); Mahdawi v. Trump, _ F.4th _, No. 25-1113, 2026 WL 2090981, at *8 (2d Cir. July 21, 2026).

Sometime thereafter, petitioner went to the Dominican Republic.  When he attempted to reenter the country, U.S. Customs and Border Protection ran his name and saw the two Pennsylvania theft convictions and detained petitioner on the basis that his convictions rendered him inadmissible.  <u>See</u> 8 U.S.C. § 1182(a)(2)(A)(i)(I).

Petitioner was placed in removal proceedings, where he argued that he was not inadmissible due to the petty crime exception of the applicable statute.  <u>See</u> 8 U.S.C. § 1182(a)(2)(A)(ii)(II).  The immigration court rejected that argument and ordered him removed to the Dominican Republic.  He unsuccessfully appealed to the Board of Immigration Appeals ("BIA") and petitioned for review by the Second Circuit, where he has also moved for a stay of removal.  The proceedings before the Second Circuit are currently pending.

When an appeal is rejected by the BIA, the alien's order of removal becomes "administratively final," such that § 1231 mandates the alien's detention and removal, unless the alien petitions for judicial review of the BIA decision and obtains a stay of removal, in which case the removal order becomes final upon the court's affirmance.  <u>Id.</u> § 1231(a)(1)(B)(i)-(ii).  In the Second Circuit, the Government maintains a voluntary practice of forbearing from removing of an alien with a petition for review pending before the Second Circuit ("forbearance practice").[2]  <u>See</u> <u>In re Immigr. Petitions for Rev. Pending in U.S. Ct. of Appeals for Second Cir.</u>, 702 F.3d 160 (2d Cir. 2012).

---

[2] This practice is usually referred to as a "policy" or "agreement."  <u>See, e.g.</u>, <u>Sarr v. Garland</u>, 50 F.4th 326, 335 (2d Cir. 2022) (referring to "the government's forbearance policy"); <u>Zheng v. Mukasey</u>, 302 F. App'x 55, 56 (2d Cir. 2008) (referring to "the forbearance agreement").  In this Court's opinion, those terms are misnomers.  First, the "agreement" appears to be, at least in some respects, completely illusory, as the Government can unilaterally renege in any individual case.  <u>See</u> <u>In re Immigr. Petitions</u>, 702 F.3d at 162 ("In the event that the Court and a petitioner are advised at any time that this assumption," <i>i.e.</i>, that "the Government's forbearance policy has assured that removal will not occur," is "unwarranted, the petitioner may promptly apply for a stay of removal.").  Second, even if there is an enforceable "agreement" or "policy," it is only enforceable by the Second Circuit, and such enforcement suggests that the Second Circuit does not consider the forbearance practice as the equivalent of a court order.  <u>See</u> <u>Loachamin v. Kurzdorfer</u>, 792 F. Supp. 3d 353, 362 (W.D.N.Y. 2025)  ("the Second Circuit has contemplated sanctioning the government for 'breaching' the Forbearance Agreement, not holding DHS in contempt of a court order."  (citing <u>Liyanage v. Holder</u>, 570 F. App'x 72, 75 (2d Cir. 2014)); <u>See also</u> <u>Zheng v. Mukasey</u>, 302 F. App'x 55, 56 (2d Cir.

Petitioner seeks habeas relief because, in his view, his removal order is not yet final. His theory is that the forbearance practice constitutes a "court ordered stay of removal" such that petitioner is not yet within the gamut of § 1231, and is instead detained under § 1226. Therefore, says petitioner, his ongoing detention without a bond hearing is unlawful.

**DISCUSSION**

Habeas corpus "stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, 562 U.S. 86, 91 (2011); see also Öztürk v. Hyde, 136 F.4th 382, 393 (2d Cir. 2025). The Court may issue a writ under Section 2241 "whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." Lopez v. Sessions, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing Demore v. Kim, 538 U.S. 510, 516-17 (2003)).

The question here is whether petitioner's ongoing detention without bond warrants habeas relief. If petitioner is detained under § 1231, the answer is no, unless petitioner has been detained for longer than six months, which is not the case here. See Zadvydas v. Davis, 533 U.S. 678, 689 (2001). If petitioner is detained under § 1226, the answer is yes. See Jennings v. Rodriguez, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.").

Whether § 1231 or § 1226 applies here concerns § 1231's 90-day "removal period," during which the government "shall detain the alien." See 8 U.S.C. §§ 1231(a)(2)(A). Thus, the

---

2008) (threatening sanctions and ordering "the government [to file] an affidavit indicating [] whether it breached the forbearance agreement and/or contradicted its representation that it did not oppose the stay").

operative question is whether the removal period has started.  The removal period is triggered by the latest of:

(i)      The date the order of removal becomes administratively final.

(ii)     If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii)    If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).  The parties agree that, because petitioner sought judicial review of the BIA's decision, subsection (ii) applies, so the only question left is whether "a court [has] order[ed] a stay of the removal of" petitioner.

As discussed above, when an alien petitions the Second Circuit to review a BIA decision, the forbearance practice usually halts the alien's removal.  See In re Immigr. Petitions, 702 F.3d at 162.  Respondents, however, argue that the forbearance practice has no effect on petitioner's removal period because it is not a "court order[ed]" stay.  See 8 U.S.C. § 1231(a)(1)(B)(ii).  The Court agrees.

The Second Circuit has avoided addressing "the contours of judicial review during detention pursuant to the . . . forbearance [practice]."  Hechavarria v. Sessions, 891 F.3d 49, 52 n.3 (2d Cir. 2018) (citing In re Immigr. Petitions, 702 F.3d at 62).  And in Godfrey v. Ball, No. 23-7104, 2024 WL 4471571, at *2 n.1 (2d Cir. Oct. 11, 2024) (summary order), the Second Circuit expressly declined to "address [the] argument [of whether] the forbearance [practice] is the equivalent of a court-ordered stay of removal."  Thus, there's an open issue as to whether § 1231(a)(1)(B)(ii) is satisfied by the forbearance practice.

District courts are split on the issue.  Most courts "have found that the forbearance [practice] amounts to a court ordered stay of the removal of the alien and that detainees with a pending petition for review are detained pursuant to [8 U.S.C.] § 1226."  Sanchez v. Decker, 431

4

F. Supp. 3d 310, 315 (S.D.N.Y. 2019) (collecting cases, quotations omitted); see also Singh v. Francis, No. 26-cv-344, 2026 WL 507890, at *3 (E.D.N.Y. Feb. 24, 2026) (finding the practice "operates as a *de facto* stay").

But a "minority of [] courts [] hold that the [practice] does not constitute a 'stay' as dictated by 8 U.S.C. § 1231(a)(1)(B)(ii)." Loachamin v. Kurzdorfer, 792 F. Supp. 3d 353, 359 (W.D.N.Y. 2025); see also Mosocoso v. Joyce, No. 22-cv-6272, 2023 WL 2016371, at *4 (S.D.N.Y. Feb. 15, 2023) ("The forbearance [practice] is fundamentally different from a stay and does not meet the statutory requirement of a court-ordered stay.").

There is surely some intuitive appeal to the majority's reasoning: a court-ordered stay of removal feels somewhat superfluous when the Government says it won't remove the alien. But that cannot be the case. Indeed, the Second Circuit has denied stay-of-removal motions on the merits notwithstanding the effect of the forbearance practice. See Sarr v. Garland, 50 F.4th 326, 335 (2d Cir. 2022) ("we decline to grant the stay [but] understand, of course, that the government's forbearance [practice] is likely to mean that the government will not remove [petitioner] pending the resolution of his petition").

If the forbearance practice were a *de facto* court-ordered stay, the motion in Sarr would have been denied as moot, not on the merits. That is because a court-ordered stay has a material effect on both the alien's removal and the alien's detention, whereas the forbearance practice has no effect on the latter. Nor could it. Detention under § 1231 is congressionally mandated, so unless § 1231(a)(1)(B)(ii) is satisfied, respondents "shall detain the alien." Respondents' voluntary practice of not removing the alien thus cannot negate its statutory obligation to detain the alien.

That is why this Court joins the minority. The statute applies "if a court orders a stay of the removal of the alien," 8 U.S.C. § 1231(a)(1)(B)(ii). The forbearance practice is not a "court order," and the Second Circuit has not yet ruled on petitioner's motion for a stay of removal. That ends the inquiry. Because § 1231(a)(1)(B)(ii) is not satisfied, § 1231(a)(1)(B)(i) dictates that petitioner's removal period (and thus his mandatory detention) began when his removal order became administratively final, *i.e.*, May 29, 2026. And because petitioner's detention is mandated by § 1231, he is not entitled to a bond hearing.

## CONCLUSION

The petition is denied.

**SO ORDERED.**

*Brian M. Cogan*

U.S.D.J.

Dated: Brooklyn, New York
       August 12, 2026

6